NATIONAL INVESTORS FIRE & CASUALTY
INSURANCE COMPANY *v.* Paul David CHANDLER,
COLUMBIA COUNTY CHAPTER OF THE
AMERICAN ASSOCIATION OF RETIRED PEOPLE
and Willie McLAUGHLIN

CA 81-223                                    628 S.W. 2d 593

Court of Appeals of Arkansas
Opinion delivered February 24, 1982
[Rehearing denied March 24, 1982.]

*Tom Forest Lovett, P.A.,* by: *Tom F. Lovett,* for appellant.

*Matthews & Sanders,* by: *Roy Gene Sanders,* for appellees.

*Anderson, Crumpler & Bell, P.A.,* for appellees Columbia Chapter of the Association of Retired People and Willie McLaughlin.

George K. Cracraft, Judge. The appellant, National

Investors Fire & Casualty Insurance Company, appeals from a judgment of the trial court holding it liable to the appellees, Paul David Chandler and Columbia County Chapter of the American Association of Retired People, under a temporary binder of liability insurance issued in favor of the appellee association. The appellant maintains that the trial court's finding that the binder was in full force and effect at the time the loss occurred is clearly against a preponderance of the evidence and that the court further erred in finding that the local agent procuring the binder was not a dual agent capable of receiving notice of cancellation of that binder on behalf of the insureds.

Findings of fact of a trial court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence, and in making that determination we give due regard to the superior opportunity of the trial court to judge the credibility of the witnesses. Rule 52 (a), Arkansas Rules of Civil Procedure; *Sharp County* v. *Northeast Arkansas Planning & Consulting Company*, 269 Ark. 336, 602 S.W. 2d 627 (1980); *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W. 2d 409 (1981).

After hearing evidence the trial court, sitting as a jury, made the following findings of fact:

In April, 1978 Mr. A. T. Van Pelt acting as an agent of A.A.R.P. contacted Mac Childs of the Southern State Insurance Agency for the purpose of securing automobile insurance on A.A.R.P. vehicles. On April 18, 1978, Childs contacted National Investors by phone and it orally agreed to bind coverage on the automobile. The binder issued by National Investors contained the following provision:

Coverage has been bound for thirty (30) days from the effective date shown in item 6 above unless previously cancelled by notice to the applicant.

The date of the binder as shown in item 6 was April 18, 1978 and the applicant was identified as A.A.R.P., Columbia County Chapter.

During meetings between Mac Childs and Van Pelt, Van Pelt told Childs he would be leaving town on a vacation and that he would be back in touch with Childs upon his return to Magnolia so that they could attempt to secure excess coverage with another company. Van Pelt left Magnolia on April 26, 1978 and was out of town throughout the time period relevant to this case.

National Investors after issuance of the binder decided to reject the insurance application of A.A.R.P. and gave notice of their intent to cancel by letter dated April 26, 1978 directed to Mac Childs. This letter was received by Childs on April 28, 1978. The letter contained the following statement:

> We will consider coverage bound for an additional five (5) days from the date of this letter in order to give you time to replace.

On April 28, 1978, Childs directed a letter to Van Pelt advising him of the cancellation. The envelope contained a letter with a postmark of April 29, 1978. Based upon the testimony of the Postmaster, the Court finds that the letter was delivered to the indicated address on May 1, 1978. The address on the letter was of the Presbyterian Church as A.A.R.P. had an office located in the church for its use. A.A.R.P. had an employee at the church but since the letter was directed to Van Pelt it was not opened and was placed on Mr. Van Pelt's desk where it remained unopened until after the automobile accident. The Court finds as a matter of fact that had the letter been addressed solely to A.A.R.P., Columbia County Chapter then the letter would have been opened by the employee and transmitted to an executive official of the association. (T. 39-40)

On May 5, 1978 Chandler was involved in a motor vehicle accident with a vehicle owned by A.A.R.P. and driven by its employee. The automobile was identified under the binder as being insured by National Investors and as a consequence Chandler filed a lawsuit against

A.A.R.P. and recovered a judgment in the amount of $2,851.75 with interest and costs. Plaintiff filed a direct action against National Investors for recovery of the judgment, twelve percent (12%) penalty and attorney's fees.

National Investors refused to defend A.A.R.P., who employed its own defense counsel at the cost of $654.82. By intervention A.A.R.P. sought to recover its defense costs and the damages to its automobile in the amount of $1,226.01 plus twelve percent (12%) penalty and reasonable attorney's fee.

On these findings the court concluded that the binder was not cancelled effectively and was in full force and effect on the date the accident occurred. We cannot find from a review of the record that these findings are clearly erroneous or that the conclusions based on them were not warranted.

Relying upon *Home Ins. Company of New York v. Jones*, 192 Ark. 916, 95 S.W. 2d 894 (1936), the appellant then argues that the trial court erred in not holding that the mailing of the notice by Childs to Van Pelt was sufficient even though it was not actually received by Van Pelt. In *Home* the policy contained an express provision that "notice of cancellation *mailed* to the insured at the address of the insured stated in the policy *shall be sufficient notice.*" The court there held that under the express wording of the policy the mailing of the cancellation notice was sufficient compliance and actual receipt by the insured was not required as non-receipt of the notice was a risk he assumed under the clear wording of the policy. The binder in question here contained no provision declaring posting of notice to be sufficient. It required that the insured be given notice. Notice of cancellation of coverage is not effective unless actually communicated to the insured unless the policy by its terms provides for constructive notice. *Commercial Union Fire Ins. Co. v. King*, 108 Ark. 130, 156 S.W. 445 (1913).

In *Merrimack Mutual Fire Ins. Co. v. Scott*, 219 Ark. 159, 240 S.W. 2d 666 (1951), it was stated:

The purpose of provisions for notice to the insured,

such as the one here involved, is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection. 29 Am. Jur. 7, § 282; 35 A.L.R. 900. It is well settled by the decisions of this court and the authorities generally that a strict compliance with the conditions of such a provision is a prerequisite to assertion of a right of cancellation thereunder. 45 C.J.S. 7, § 450 (b) (1); 29 Am. Jur. 7, § 275; *Commercial Union Fire Ins. Co.* v. *King*, 108 Ark. 130, 156 S.W. 445; *Home Ins. Co. of New York* v. *Jones*, 192 Ark. 916, 95 S.W. 2d 894.

Here the appellant did not give notice to the appellee as provided in the binder. It communicated its intention to cancel to its local agent and relied entirely upon that agent to give notice to the applicant. It "had no knowledge or preference as to what method Mr. Childs used, except to give notice." The defect in appellant's argument was most succinctly pointed out in *Rommel* v. *New Brunswick Fire Ins. Co.,* 214 Minn. 251, 8 N.W. 2d 28 (1943) where the court stated:

> But the fatal defect with this contention is this information was never communicated to plaintiff. Since defendant necessarily could deal only with the public and this plaintiff through its agents and representatives, it follows that any letter or other communication between its own agents, without notice to the one entitled to receive it, was but a futile gesture, a thing of no more force or value, as notice to plaintiff, than if Neely had talked to himself about it.

The appellant next argues that the posting of the letter by Childs to Van Pelt was sufficient notice to A.A.R.P. and failure of Van Pelt to receive the letter prior to the loss was not the fault of the appellant. Assuming that Childs was the proper person to give the notice and Van Pelt to receive it, this argument overlooks the testimony of Van Pelt that at the time he left for Chicago the binder was in full force and effect and that he had fully informed Childs of his intended absence from the city. The trial court expressly found that Childs was so informed and that "Van Pelt would contact Mac Childs upon his return so they could place excess

coverage with another company." That knowledge on the part of the agent would be imputed to his principal, National Investors.

In *Merrimack* it was held that an attempt to give notice of cancellation is ineffective where the insurer or its agents have knowledge of facts that make it known that the notice will not be received prior to the cancellation date. We find no error in the trial court's findings or conclusion in this regard. As Childs was made aware that Van Pelt would be out of the city and would contact him on his return, any notice of cancellation addressed to Van Pelt would be ineffective and should have been directed to the non-profit organization or one of its available officers or authorized agents.

The appellant finally contends that as Van Pelt left it entirely up to Childs to place the coverage and did not specify any particular insurer, Childs became a dual agent and was agent for A.A.R.P. for the purpose of both securing coverage and receiving notice of cancellation. In support of this argument it relies upon *U.S. Fire Ins. Co.* v. *Montgomery*, 256 Ark. 1047, 511 S.W. 2d 659 (1974). We do not construe *Montgomery* as so holding. It limited that rule to those cases where there has been an agreement that the agent will insure and keep the subject property insured in the future, and declares that such an agreement may be implied where the agent accepts notice of cancellation and renews the policy on expiration without notifying the insured. Here there was no evidence of such agreement or course of prior conduct of the parties from which such an agreement might be implied. The trial court made the following finding:

> Mr. Childs himself testified that he was the agent of National Investors and not A.A.R.P. and the court finds no evidence that Mac Childs had any authority to receive cancellation notices for A.A.R.P. An agency between Mac Childs and A.A.R.P. was solely for the purpose of procuring insurance and was terminated at the time the binder became effective.

From our review of the record we cannot say that this finding

was clearly against a preponderance of the evidence.

We affirm.

MAYFIELD, C.J., not participating.