## ARKANSAS STATE HIGHWAY COMMISSION *v.* LEE WILSON AND COMPANY, INC.

CA 92-376                                     858 S.W.2d 137

Court of Appeals of Arkansas
En Banc
Opinion delivered July 7, 1993

*Robert L. Wilson*, Chief Counsel; *Philip N. Gowen*, and *Charles Johnson*, for appellant.

*Gibson & Rhodes*, by: *Mike Gibson* and *Richard Rhodes*, for appellee.

JAMES R. COOPER, Judge. The appellant, the Arkansas State Highway Commission, appeals from a judgment awarding the appellee, Lee Wilson and Company, Inc., $45,000.00 as compensation for a taking of a portion of its lands by eminent domain. On appeal, the appellant argues that the trial court erred in denying a motion to strike the testimony of the appellee's value witness.

The appellant brought this action to condemn 1.16 acres in the southeast quadrant of the appellee's property which is located at the intersection of Interstate 55 and Highway 181 in Mississippi County. The appellant also sought controlled access on 69 feet in the southwest quadrant and on 438 feet in the northeast quadrant which fronted Highway 181. The access control fence built on the northeast quadrant of the property reduced its previous highway frontage from 463 feet to a 25-foot access point. The appellee based its damages on this reduction of access.

At trial, George Lease testified on behalf of the appellee. Mr.

Lease testified that of the 420 acres of land owned by the appellee only the 3.21 acres in the northeast quadrant which fronted Highway 181 had commercial value. He arrived at 3.21 acres by considering the 463 feet of frontage to a depth of 300 feet. Mr. Lease testified that in his opinion, based on comparable sales, the 3.21 acres had a value before the construction of the fence of $104,175.00, or approximately $32,000.00 per acre. He stated that with the fence in place the fair market value of the 3.21 acres would be $10,000.00, resulting in damages to the appellee in the amount of $94,175.00. He testified that he looked at the whole property. He stated that he did not appraise the rest of the property because he did not think those acres would have any commercial development possibilities. He stated the highest and best use of the remainder of the parcel was agricultural and that the fence would not affect the value of that land. The appellee owned approximately 3.16 acres of land in the southeast quadrant, 1.16 acres of which was condemned by the appellant. Mr. Lease testified that the remaining land in this quadrant was subject to flooding and that he did not consider it as commercially viable as the land across the highway.

Counsel for the appellant moved to strike Mr. Lease's value testimony for failure to make a before and after appraisal of the appellee's entire property and for his failure to consider the impact of the construction project on the value of the remaining lands. On denying the appellant's motion, the trial court stated:

> I'm going to deny the motion. It seems to me that to consider 420 acres would be a bit ridiculous in this situation. The only property we are talking about is the approximate four acres that were involved.

> I'm going to allow your expert to testify as to the diminution of the 420 acres if that's what you choose to do, and the jury — you can point out to the jury that their witness only testified to a certain portion of it.

> It's going to be my ruling that he was competent to testify and that you didn't object to his expertise. That he did testify to the fair market value of the property and stated his reasons. And that's sufficient. And that's something the jury can weigh and assess, and I will allow each of you to argue to the jury and persuade the jury that the testimony

for whichever point you are taking is either sufficient or insufficient. It would be a question of weight for the jury and not admissibility.

Thereafter, Mr. Bob Colford, a real estate appraiser for the appellant, testified that he considered roughly 425 acres for his appraisal. Of that acreage, he considered five acres to be commercial. He stated that three of the acres were in the northeast quadrant and the remaining two were in the southeast quadrant. He considered the rest of the parcel to be agricultural and valued it at $1,000.00 an acre. He testified that the before value of the commercial land was $25,000.00 an acre, although he agreed that Mr. Lease's before value of $32,000 an acre was pretty accurate. In his opinion, the total value of the property before the taking was 420 acres of agricultural land at $1,000.00 an acre and five acres of commercial property at $25,000.00 an acre for a total value of $545,000.00. He testified that the five acres of commercial property had appreciated in value to $35,000.00 an acre after the construction. Therefore, in his opinion, the value of the property after the highway construction and taking was $594,850.00, which exceeded the before value. He stated that the excess in value represented benefits or enhancements to the property as a result of the construction of the highway project.

The appellant argues that the trial court erred in not striking Mr. Lease's value testimony because he testified to the value of 3.21 acres in the northeast quadrant and made no appraisal of the remaining lands in the other quadrants, particularly the value of the 1.16 acres which was acquired by the appellant in the southeast quadrant. The appellant suggests that, by not appraising the land in the southeast quadrant, the appellee avoided having to consider enhancement to the property.

When the sovereign exercises its right to take a portion of a tract of land in eminent domain cases, the proper way to measure just compensation is by the difference in the fair market value of the entire tract immediately before the taking and the fair market value immediately after the taking. *Property Owners Improvement Dist.* v. *Williford*, 40 Ark. App. 172, 843 S.W.2d 862 (1992). We find Mr. Lease's testimony consistent with this rule. In fact, the testimony of both expert witnesses was

actually very similar. Mr. Lease testified that he considered 3.21 acres in the northeast quadrant of the parcel to be of commercial value. Mr. Colford also found the three acres in this quadrant to be of commercial value. They disagreed as to two acres in the southeast quadrant. In his opinion, Mr. Lease found this area did not have commercial value because it was subject to flooding. Mr. Colford disagreed and considered five acres in total to be commercially viable. However, both agreed that the remaining acreage was agricultural and that its value was unaffected by the highway project. The difference is that Mr. Colford calculated this agricultural land in his estimate thereby adding $420,000.00 (420 acres at $1,000.00) to his before and after value. Even if Mr. Lease had done the same, it would not have had an effect on his estimate of the appellee's damages. We do not require testimony be given in exact mechanical fashion. *Arkansas Louisiana Gas Co.* v. *James*, 15 Ark. App. 184, 692 S.W.2d 761 (1985). A motion to strike is a matter largely within the sound discretion of the trial judge and we cannot hold that the trial court erred in refusing to strike Mr. Lease's testimony. *Property Owners Improvement Dist., supra.*

The appellant also advances two other arguments. First, he argues that the jury instructions were confusing and misleading to the jury because, while the trial court refused to strike the testimony of the appellee's expert, it instructed the jury to consider the fair market value of the entire 420 acres before and after the taking, considering the highway facility completed and permanently in place in accordance with the construction plans, to arrive at the amount of just compensation. We note that this argument has not been preserved for appeal because this issue was not presented or decided at the trial level and we do not consider issues raised for the first time on appeal. *Webb* v. *Thomas*, 310 Ark. 553, 837 S.W.2d 875 (1992). Furthermore, we find that the appellant suffered no prejudice since the trial court instructed the jury to determine the amount of just compensation by the method argued by the appellant. We will not reverse absent a showing of prejudice. *Webb, supra.*

He also argues that Mr. Lease's value testimony was contrary to Ark. Code Ann. § 27-67-316(f) (1987), which directs the court or jury to consider any benefits to the remaining land arising from the location of the highway. The appellant

asserts that this statute imposes an obligation on appraisers to do likewise. However, appellant is also raising this argument for the first time on appeal, and therefore, it will not be considered by the appellate court. *Cox* v. *Bishop*, 28 Ark. App. 210, 772 S.W.2d 358 (1989).

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I must respectfully dissent from the opinion of the majority in this case. The rule in determining just compensation where there is a partial taking by the sovereign in the exercise of its right of eminent domain is the difference in the fair market value of the entire tract immediately before the taking and the fair market value of the remaining land immediately after the taking. The reason for that rule was recently explained by this court in *Property Owners Improvement District* v. *Williford*, 40 Ark. App. 172, 843 S.W.2d 862 (1992), where we said:

> When the sovereign exercises its rights to take a portion of a tract of land, the proper way to measure just compensation is by the difference in the fair market value of the entire tract immediately before the taking and the fair market value immediately after the taking. In this way any special benefit resulting from the public use of the land taken by the sovereign which increases the value of the land not taken will offset the amount the sovereign will have to pay. This is proper because the owner of the land has received his just compensation, although partly by the increase in value of the land he has left.

40 Ark. App. at 178, 843 S.W.2d at 866.

This rule has been well established in condemnation cases filed by the Arkansas State Highway Commission to acquire land for highway purposes. *See Arkansas State Highway Commission* v. *Fox*, 230 Ark. 287, 322 S.W.2d 81 (1959); *Barnes* v. *Arkansas State Highway Commission*, 10 Ark. App. 375, 664 S.W.2d 884 (1984).

In the instant case, it is admitted that the appellee owns 420 acres of land on which are located all four quadrants of the

intersection of Highway 181 and Interstate Highway 55 in Mississippi County, Arkansas. The State Highway Commission filed this suit to take 1.16 acres of appellee's land lying in the southeast quadrant of the intersection; to impose controlled access on 69 feet lying in the southwest quadrant; and to impose controlled access on 438 feet in the northeast quadrant.

The appellee's only value witness testified to the before and after value of only 3.21 acres of the land taken. That tract is in the northeast quadrant of the intersection. The witness gave no testimony as to the before and after value of the appellee's land lying in the other three quadrants — not even as to the 1.16 acres taken from the land in the southeast quadrant. Also, he did not testify as to the before and after value of the appellee's 420 acres. The appellant moved to strike the testimony of this witness because he testified to the before and after value of only 3.21 acres of the land taken and not to the before and after value of the whole 420 acres. The trial court denied the motion.

It is the appellee's argument, accepted by the majority of this court, that the trial court's ruling was correct. I do not agree. The rule of law applicable to this situation is very clear, and the reason for the rule is very clear. Appellee's witness chose the 3.21 acres because that area, bounded by the 463 feet of controlled access, plus a depth of 300 feet, was all of the property affected that the witness thought had commercial value.

The problem with the testimony of this witness is that it avoided the rule that allows the state credit for any enhancement in value resulting from the taking. This credit is even provided by statute. *See* Ark. Code Ann. § 27-67-316(f)(1987).

In the *Fox* case, *supra*, the expert witness for the landowners testified that the "total" amount of damage sustained by the taking of a portion of their land was $20,800.00, but refused to give the before and after figures. The Arkansas Supreme Court found there was "no substantial evidence" to support a judgment for more than $10,250.00, which was the highest before and after difference testified to by the witnesses for the State Highway Commission. And in *Lindsey* v. *Forrest City*, 259 Ark. 743, 536 S.W.2d 305 (1976), the court held that the appraisal of the only value witness offered by the city should have been stricken because he "did not use a permissible method of fixing just

compensation." The court said the witness admitted he determined just compensation by valuing the 121 acres taken for a oxidation pond at $350 per acre and had not determined the value of the whole 690-acre farm.

In the instant case, the court should have stricken the testimony of the appellee's value witness because he did not testify as to the before and after value of the appellee's entire tract of 420 acres. The jury was entitled to this information to ensure that the State would get credit for any enhancement of the entire tract. Obviously, the witness did not have to attribute any enhancement to the remaining land but he should not have been permitted to side step the issue in contravention of the long-established case law of this state.

I would reverse and remand for a new trial.